## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ZURI OSTERHOLT, on behalf of herself and all other similarly situated persons, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: |
| | ) | |
| COREPOWER YOGA, LLC, | ) | |
| | ) | |
| Defendant. | ) | **JURY DEMANDED** |

# COMPLAINT

Plaintiff Zuri Osterholt ("Ms. Osterholt"), by and through her attorneys, on behalf of herself and all other persons similarly situated, states as follows for her complaint against Defendant CorePower Yoga, LLC (hereinafter known as "CorePower"):

## INTRODUCTION

1.      CorePower claims to provide a world class experience for everyone and preaches that its teachers are a huge part of the CorePower experience. However, while CorePower has built a highly successful and profitable business, its teachers are "over-stretched" and not being paid for many of the duties they are required to perform as employees. CorePower fails to compensate its employees for actual hours worked, including for essential and integral job duties such as preparing to teach classes, developing and practicing their sequences, compiling music playlists, communicating with customers, and reading and writing work related emails.

2.      Prior to becoming a CorePower instructor, prospective employees are required to obtain a general teaching certification through CorePower's "200-Hour Teacher Training" program. To enroll in this certification program, prospective employees are required to pay CorePower approximately $3,000.00, purchase reading materials, and purchase non-CorePower classes out of their own pocket. While graduates of CorePower's "200-Hour Teacher Training" are certified instructors, CorePower then requires its instructors to pay CorePower an additional $500.00 for extra training known as "CorePower Extensions" and teach a certain number of classes without any compensation whatsoever.

3.      Only after paying CorePower a total of $3,500.00 and completing their training programs, are prospective instructors allowed to *audition* for CorePower's internship program.

4.      Then, only those who pass their audition are entered into CorePower's internship program. *Interns* are paid minimum wage and required to teach 30 classes before they become *instructors*. Interns receive minimum wage for the length of each class they teach (typically 60 minutes) and an additional 30 minutes of front desk time before and after each class. During this front desk time, interns are required to check students in, fill out paperwork, sell merchandise, communicate with students, read emails, and memorize studio announcements.

5.      CorePower only compensates its interns for their instruction time and 30 minutes of front desk time before and after each class, regardless of whether they are required put in extra time, and despite the extra hours per week interns are

required to work above and beyond their instruction and front desk duties. These additional duties include, but are not limited to, preparing for each class, developing and practicing their sequences, compiling music playlists, communicating with customers, and reading and writing work related emails.

6.     After completing CorePower's 200-Hour Teacher Training, completing CorePower's Extensions Program (at a total cost of more than $3,500.00), passing an audition, and teaching 30 classes as an intern, one can finally a become CorePower *instructor*. CorePower instructors are compensated at a rate of $30 per "class," which is defined as instruction time in the studio (typically 60 minutes) and 30 minutes of front desk time before and after each class. As is the case with interns, instructors are required to check students in, fill out paperwork, sell merchandise, communicate with students, read emails, and memorize studio announcements during their front desk time. CorePower only compensates its instructors for their instruction time and 30 minutes of front desk time before and after each class, regardless of whether they are required put in extra time.

7.     Also similar to interns, instructors are not compensated for work performed outside of their studio, such as preparing for each class, developing and practicing their sequence, compiling music playlists, communicating with customers, and reading and writing work related emails. All of this additional work is performed without compensation.

8.     On behalf of those employees who endured the employment process and compensation policies described above, Plaintiff brings this action on behalf of herself

and all those similarly situated to seek redress through this proposed Illinois class action and nationwide collective action, in the form of unpaid wages, liquidated damages, punitive damages, and attorney's fees and costs.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C §1331, arising under 29 U.S.C §216(b). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.     In the alternative, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2), as members of the proposed Nationwide FLSA Collective Action, Illinois Class, and Illinois Subclass, including the named Plaintiff, are citizens of states different from Defendant CorePower's home state, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

11.     This Court has personal jurisdiction over the Defendant CorePower as CorePower's activities within this Court's jurisdiction have given rise to this claim.

12.     Venue is proper in this jurisdictional district as this Court has personal jurisdiction over Defendant CorePower, and a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## THE PARTIES

13.     Plaintiff Ms. Osterholt is a resident and is domiciled in Cook County, Illinois. From June 15, 2015 to August 9, 2015, Ms. Osterholt was employed by

CorePower as an *intern*. From August 10, 2015 to February 4, 2016, Ms. Osterholt was employed as an *instructor*. From June 15, 2015 to February 4, 2016, Ms. Osterholt was employed by CorePower within this judicial district.

14.     CorePower is a Colorado corporation that operates more than 130 studios nationwide, 26 within this judicial district.

## FACTUAL ALLEGATIONS

15.     In October, 2012, Ms. Osterholt began taking classes at CorePower's studio located at 3232 North Lincoln Ave., Chicago, IL 60657. Through her practice at CorePower, a CorePower employee recruited her to become an instructor and enroll in Corepower's 200-Hour Teacher Training Program.

16.     Ms. Osterholt paid CorePower's 200-Hour Teacher Training fee on December 14, 2014 and attended her first associated training class on or around February 17, 2015. She completed CorePower's 200-Hour Teacher Training Program on or around April 19, 2015 and received her general yoga teaching certificate that same day.

17.     Despite being a certified instructor, to teach at CorePower Ms. Osterholt was required to complete CorePower's Extension program at an additional cost of $500.00. Ms. Osterholt made her $500.00 payment to CorePower in April 2015 and attended her first CorePower Extensions training class on April 28, 2015. She completed CorePower's Extension program on or around May 30, 2015.

18.  After completing CorePower's 200-Hour Teacher Training Program, obtaining a teaching certification, and completing additional training through CorePower's Extension program, Ms. Osterholt was still required to audition to become a CorePower *intern*. Ms. Osterholt's audition took place on or around June 15, 2015, and she received notice that she had been admitted to CorePower's internship program that same day.

19.  Through CorePower's internship program, Ms. Osterholt was required to teach 30 classes before becoming a CorePower *instructor*. Ms. Osterholt taught her first class as an intern in June 2015 and completed CorePower's internship program, teaching her 30th class, on August 9, 2015.

20.  For each of the 30 classes Ms. Osterholt taught as an intern, she was paid minimum wage for studio instruction time (generally 60 minutes), as well as 30 minutes of front desk time before and after every class. As such, for each of the 30 classes Ms. Osterholt taught as as intern, she was paid minimum wage for 2 hours of work.

21.  As an intern, Ms. Osterholt was often required to stay at the studio for more than 2 hours without any additional compensation. Moreover, in addition to the 60 minutes of studio instruction time and 30 minutes of front desk time before and after every class, Ms. Osterholt spent a significant amount of time preparing for each class, including developing and practicing sequences, compiling music playlists, communicating with customers outside the studio, and reading and writing work related emails. She was not compensated for any of these responsibilities.

22.     After teaching her 30th class as an intern, Ms. Osterholt was finally considered a CorePower *instructor*. Ms. Osterholt taught her first yoga class as an instructor on or around August 10, 2015. She taught her last yoga class as a CorePower yoga instructor on or around February 4, 2016. Through her employment as a CorePower instructor, Ms. Osterholt frequently taught classes at CorePower yoga studios across the Chicagoland area.

23.     For each "class," Ms. Osterholt was paid $30.00 before taxes. CorePower's compensation policy defines "class" as instruction time in the studio (typically 60 minutes) and 30 minutes of front desk time before and after each class.

24.     Similar to her employment as an intern, as a CorePower instructor, Ms. Osterholt was often required to stay at the studio for more than 2 hours without any additional compensation. Moreover, Ms. Osterholt was required to develop and practice sequences, compile music playlists, communicate with customers outside the studio, and read and write work related emails. Ms. Osterholt was not compensated for any of this work.

25.     Preparing to teach classes, as both an intern and instructor, by developing and practicing sequences, compiling music playlists, communicating with customers outside the studio, and reading and writing work related emails, was essential and integral to Ms. Osterholt's employment with CorePower.

26.     CorePower requires its interns and instructors to prepare for teaching classes by, among other things, developing and practicing yoga sequences, compiling

music playlists, communicating with customers outside the studio, and reading and writing work related emails.

27.     CorePower does not compensate its interns and instructors for the time spent performing these additional tasks which are required as CorePower employees.

28.     CorePower does not compensate its interns and instructors when they are required to work at the studio for more than the allotted instruction and front desk time.

29.     CorePower is aware that its interns and instructors, including Ms. Osterholt, spend significant time on necessary tasks that are separate and distinct from the time spent teaching classes and attending to their front desk duties, yet CorePower does not compensate its interns and instructors for performing those tasks.

30.     CorePower is aware that its interns and instructors, including Ms. Osterholt, are often required to work at their studios for more than the allotted instruction and front desk time, yet CorePower does not compensate its interns and instructors for this additional time.


**NATURE OF PLAINTIFFS' CLAIMS**

31.     Ms. Osterholt brings this action on behalf of herself and all those similarly situated, under the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq,*; the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1, *et seq;* and the Fair Labor Standards Act of (FLSA), 29 U.S.C. § 201, *et seq.* for Defendant's

failure to pay Ms. Osterholt, and other similarly-situated employees, earned minimum wage and straight time wages.

### A. ILLINOIS CLASS ACTION CLAIMS

32.     Ms. Osterholt's claims under the IMWL and IWPCA are brought as a class action pursuant to Federal Rule of Civil Procedure Rule 23 on behalf of herself and on behalf of all similarly-situated persons. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirement provisions.

33.     The proposed class is defined as follows:

> **All persons who have been employed by CorePower Yoga, LLC, as interns in Illinois from 10 years prior to the date of filing this claim through the present ("Illinois Class Period").**

This class shall be referred to herein as the "Illinois Class." Ms. Osterholt is a member of the Illinois Class as she worked for CorePower as an intern in Illinois during the Illinois Class Period.

34.     Pursuant to Federal Rule of Civil Procedure 23(c)(5), the proposed subclass is defined as follows:

> **All persons who have been employed by CorePower Yoga, LLC, first as interns and then as instructors, in Illinois during the Illinois Class Period.**

This subclass shall be referred to herein as the "Illinois Subclass." Ms. Osterholt is a member of the Illinois Subclass as she worked for CorePower as an intern and then an instructor in Illinois during the Illinois Class Period.

35.     Excluded from the Illinois Class and Subclass are: (1) CorePower, and any entity or division in which CorePower has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) those persons who have suffered personal injuries or emotional distress as a result of the facts alleged herein. Plaintiff reserves the right to amend the Illinois Class and Subclass definitions if discovery and further investigation reveal that any Class should be expanded, divided into subclasses, or modified in any other way.

### i. Numerosity and Ascertainability

36.     Although the exact number of the Illinois Class and Subclass Members is uncertain, the size of the Illinois Class and Subclass can be estimated with reasonable precision, and the number is great enough that joinder is impracticable.

37.     CorePower owns and operates approximately 26 CorePower yoga studios in Illinois and, upon information and belief, employs at least 500 instructors across the state.

38.     The disposition of the Illinois Class and Subclass Members' claims in a single action will provide substantial benefits to all parties and to the Court.

39.     Illinois Class and Subclass Members are readily identifiable from information and records in possession, custody, or control of CorePower.

### ii. Typicality

40.     The claims of the representative Plaintiff are typical of the claims of the Illinois Class and Subclass in that the representative Plaintiff, like all Illinois Class

and Subclass members, was employed by CorePower, and was thereby damaged by CorePower's misconduct in that the Plaintiff suffered actual damages as a result of CorePower's failure to pay its employees the prevailing minimum wage for all hours worked, not paying for certain hours worked, and failing to provide accurate wage statements.

### iii. Adequate Representation

41.     Plaintiff is a member of the Illinois Class and Subclass and will fairly and adequately represent and protect the interests of the Illinois Class and Subclass. Plaintiff has retained counsel with substantial experience in class action litigation.

42.     Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Illinois Class and Subclass and have the financial resources to do so. Neither the Plaintiff nor her counsel have interests adverse to those of the Illinois Class or Subclass.

### iv. Predominance of Common Issues

43.     There are numerous issues of law and fact common to Plaintiff and the Illinois Class and Subclass Members that predominate over any issues affecting only individual Class and Subclass members. These common legal and factual issues include:

> a. Whether CorePower paid Plaintiff, the Illinois Class, and Illinois Subclass on a per "class" basis;
>
> b. Whether CorePower paid Plaintiff, the Illinois Class, and Illinois Subclass for tasks performed outside of the classes taught;

c. Whether CorePower failed to pay Plaintiff, the Illinois Class, and Illinois Subclass the prevailing minimum wage for all hours worked during the Illinois Class Period;

d. Whether CorePower's failure to pay the prevailing minimum wage to Plaintiff, the Illinois Class, and Illinois Subclass constitutes a violation of the IMWL, 820 ILCS 105/1, *et seq;*

e. Whether CorePower's failure to compensate Plaintiff, the Illinois Class, and Illinois Subclass for all wages earned constitutes a violation of the IWPCA, 820 ILCS 115/1, *et seq;*

f. Whether CorePower failed to provide Plaintiff, the Illinois Class, and Illinois Subclass with accurate wage statements;

g. Whether CorePower's violations of the IMWL and IWPCA were willful.

44.     These common questions of law and fact arise from the same course of events, and each Class and Subclass member will make similar legal and factual arguments to prove liability.

### v. Superiority

45.     Plaintiff and Illinois Class and Subclass Members all suffered – and will continue to suffer – harm and damages as a result of CorePower's uniformly unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

46. Absent a class action, most Illinois Class and Subclass Members would likely find the cost of litigating their claims prohibitively high and would have no efficient remedy at law. Because of the relatively small size of the individual Members' claims, it is likely that few, if any, Illinois Class or Subclass Members could afford legal redress for CorePower's misconduct. Absent a class action, Illinois Class and Subclass Members' damages would go uncompensated, and CorePower's misconduct will continue without remedy.

47. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and litigants, and will provide consistency and efficiency of adjudication.

48. CorePower has acted in a uniform manner with respect to the Plaintiff, Illinois Class Members, and Illinois Subclass Members.

49. Class wide relief is appropriate under Rule 23(b)(3) because common questions predominate over individual ones, and this class action is superior to other mechanisms for fairly and efficiently adjudicating the controversy.

50. CorePower has acted on grounds that apply generally to the Illinois Class and Subclass, and inconsistent adjudications with respect to CorePower's liability would establish incompatible standards and substantially impair or impede the ability of Illinois Class and Subclass Members to protect their interests. Class wide relief assures fair, consistent, and equitable treatment and protection of all Illinois

Class and Subclass Members, and uniformity and consistency in CorePower's discharge of their duties to perform corrective action.

### B. NATIONWIDE COLLECTIVE ACTION CLAIM

51.     Plaintiff's claim under the FLSA is brought as a nationwide "opt-in" collective action pursuant to Section 16(b) of the FLSA (29 U.SC. § 216 (b)).

52.     The proposed collective action is brought on behalf of:

**all persons who have been employed by CorePower as *interns* and *instructors,* throughout the United States ("FLSA Collective Members"), from 3 years prior to the date of filing this claim through the present ("FLSA Period).**

This claim shall be referred to herein as the "Nationwide FLSA Collective Action." Plaintiff is a member of the Nationwide FLSA Collective Action as she worked for CorePower as an intern and instructor in the United States during the FLSA Period and was not compensated with minimum wages for all hours worked.

53.     Questions of law and fact common to the FLSA Collective Members as a whole include, but are not limited to, the following:

a.  Whether CorePower unlawfully failed and continues to fail to pay minimum wages for all hours worked in violation of the FLSA (29 U.S.C. §201, *et seq*.);

b.  Whether CorePower failed and continues to fail to maintain accurate records of actual time worked by the FLSA Collective Members and prospective FLSA Collective Members;

c.  Whether CorePower failed and continues to fail to record or report all time worked by the FLSA Collective Members and prospective Collective Members;

d.  Whether CorePower failed and continues to fail to provide accurate wage statement itemizing all actual time worked and wages earned by the FLSA Collective Members and prospective FLSA Collective Members.

e.  Whether CorePower's violations of the FLSA were willful.

54.  Plaintiff and the FLSA Collective Members are similarly situated, have substantially similar job requirements and pay provisions, and are subject to CorePower's common practice, policy, or plan of refusing to pay minimum wages for all hours worked in violation of the FLSA.

55.  Plaintiff's claim for relief for violations of the FLSA may be brought and maintained as a nationwide "opt-in" collective action pursuant to Section 16(b) of the FLSA, for all claims asserted by the Plaintiff and the FLSA Collective Members, because the claims of the Plaintiff are similar to the claims of the members of the prospective FLSA Collective Members.

56.  While the exact number of the FLSA Collective Members is unknown to Plaintiff at the present time, the size of the collective action can be estimated with reasonable precision, and the number is great enough that joinder is impracticable. Thus, a collective action is the most efficient mechanism for resolution of the FLSA Collective Members' claims.

57.     The FLSA Collective Members, on behalf of whom Plaintiff brings this "opt-in" collective action, are similarly situated because they have been or are employed in the same or similar position as the individually-named Plaintiff and were subject to the same or similar unlawful practices as the individually-named Plaintiff, as described above. The number and identity of other Plaintiffs yet to opt-in and consent to be Plaintiffs may be determined from the records of CorePower, and potential Plaintiffs may be notified of the pendency of this action utilizing payroll records of CorePower. At all times during the FLSA Period, all of the FLSA Collective Members were employed in the same or similar job as the Plaintiff and were paid in the same manner and under the same standard employment procedures and practices as the Plaintiff.

58.     CorePower's violations of 29 U.S.C § 206 were willful. In the alternative, CorePower violated 29 U.S.C § 206 by failing to compensate its employees at the mandated minimum wage for all hours worked.

59.     The Plaintiff and the FLSA Collective Members have been damaged by said violations of 29 U.S.C § 206.

60.     Pursuant to 29 U.S.C § 216, Defendants are liable to the Plaintiff and the FLSA Collective Members who affirmatively "opt-in" to this collective action for the full amount of all their unpaid wages, plus liquidated damages, attorneys' fees and costs.

61.     In addition, an action under 29 U.S.C § 216(b) is superior to other available methods for the fair and efficient adjudication of this controversy since the

damages suffered by the individual members of the Nationwide FLSA Collective Action may be relatively small, and the expense and burden of individual adjudication would make it impossible for such FLSA Collective Members to individually redress the wrongs done to them.

62.     Moreover, because of the similarity of the FLSA Collective Members' claims, individual actions would present the risk of inconsistent adjudications subjecting both employees and Defendants to incompatible standards of conduct.

63.     Plaintiff is currently unaware of the identities of all the FLSA Collective Members. Accordingly, Defendant should be required to provide to Plaintiff a list of all persons employed by Defendant as *interns* and *instructors,* throughout the United States, during the FLSA Period, stating their last known addresses, telephone numbers and email addresses, so that Plaintiff can provide such prospective FLSA Collective Members notice of the pendency of this action and an opportunity to make an informed decision about whether to participate in it.

## FIRST CAUSE OF ACTION
### Violation of the Illinois Minimum Wage law
### (Illinois Class Action)

64.     Plaintiff hereby re-alleges and incorporate paragraphs 1 through 49 of this Complaint as though they were fully set forth herein.

65.     This cause of action is brought by Plaintiff on behalf of a class pursuant to Federal Rule Civil Procedure Rule 23.

66. During the Illinois Class Period, CorePower was an "employer" as defined in the IMWL, and Plaintiff, the Illinois Class, and Illinois Subclass were "employee(s)" within the meaning of that Act.

67. The IMWL requires covered employers, such as CorePower, to pay all non-exempt employees the prevailing minimum wage for all hours worked.

68. Plaintiff, the Illinois Class, and Illinois Subclass were not exempt from the requirement that Defendants pay them the prevailing minimum wage for all hours worked under the IMWL.

69. During the Illinois Class Period, Defendant did not pay Plaintiff, the Illinois Class, or Illinois Subclass the prevailing minimum wage for all hours worked for CorPower; since for certain hours, Plaintiff, the Illinois Class, and Illinois Subclass were not paid any wages.

70. Defendant knew, or should have known, that Plaintiff, the Illinois Class, and Illinois Subclass were performing principal, integral, and essential activities without being paid for performing those activities.

71. As a result of CorePower's failure to pay Plaintiff, the Illinois Class, and the Illinois Subclass the prevailing minimum wage for all hours worked, CorePower violated the IMWL.

72. The foregoing conduct of CorePower constitute violations of the IMWL which significantly damaged the Plaintiff, the Illinois Class, and the Illinois Subclass.

WHEREFORE, Plaintiff, on behalf of herself, the Illinois Class, and the Illinois Subclass pray for judgment against Defendant as follows:

A.    Judgment in the amount of all back wages due as provided by the IMWL;

B.    Prejudgment interest on the back wages in accordance with 815 ILCS 205/2 and punitive damages pursuant to the formula set forth in 820 ILCS 105/12(a);

C.    Reasonable attorneys' fee and costs of this action as provided by the IMWL;

D.    Injunctive relief precluding Defendant from violating the IMWL; and

E.    Such other and further relief as this Court deems just and proper.


## SECOND CAUSE OF ACTION
**Violation of the Illinois Wage Payment and Collection Act
(Illinois Class Action)**

73.    Plaintiff hereby re-alleges and incorporates paragraphs 1 through 49 of this Complaint as though they were fully set forth herein.

74.    This cause of action is brought by Plaintiff on behalf of a class pursuant to Federal Rule Civil Procedure Rule 23.

75.    During the Illinois Class Period, CorePower was an "employer" as defined in the IWPCA, and Plaintiff, the Illinois Class, and the Illinois Subclass were "employee(s)" within the meaning of that Act.

76.    CorePower was and is obligated to pay Plaintiff, the Illinois Class, and Illinois Subclass for all wages earned.

77.     Instead, CorePower instituted practices that resulted in Plaintiff, the Illinois Class, and the Illinois Subclass working certain time without compensation, in violation of the IWPCA.

78.     Defendant knew, or should have known, that Plaintiff, the Illinois Class, and the Illinois Subclass were performing principal, integral, and essential activities without being paid for performing those activities.

79.     The foregoing conduct of CorePower constitutes violations of the IWPCA which significantly damaged the Plaintiff, the Illinois Class, and the Illinois Subclass.

WHEREFORE, Plaintiff, on behalf of herself, the Illinois Class, and the Illinois Subclass pray for judgment against Defendant as follows:

A.      Judgment in the amount of all back wages due as provided by the Illinois Wage Payment and Collection Act;

B.      Prejudgment interest on the back wages in accordance with 815 ILCS 205/2 and punitive damages pursuant to the formula set forth in 820 ILCS 115/14(a);

C.      Reasonable attorneys' fee and costs of this action as provided by the IWPCA;

D.      Injunctive relief precluding Defendant from violating the IWPCA; and

E.      Such other and further relief as this Court deems just and proper.

### THIRD CAUSE OF ACTON
### Violation of the Fair Labor Standard Act – Minimum Wages
### (Nationwide FLSA Collective Action)

80.     Plaintiff hereby re-alleges and incorporate paragraphs 1 through 31 and 51 though 63 of this Complaint as though they were fully set forth herein.

81.     This Count arises from Defendant's violations of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, for its failure to pay minimum wages to Plaintiff and other similarly situated employees. This claim is brought as a collective action under the FLSA. Plaintiff's consent to act in a representative capacity is attached hereto as Exhibit A.

82.     At all relevant times, CorePower has been and continues to be an "employer" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. §203. At all relevant times, CorePower has employed and continues to employ "employee(s)," including the Plaintiff and each of the FLSA Collective Members.

83.     Defendant CorePower operates, and at all times during the liability period, has operated studios in numerous states.

84.     Plaintiff consents to sue in this action pursuant to section 16(b) of the FLSA, 29 U.S.C. §216(b). Additional potential FLSA Collective Members may execute and file forms consenting to "opt-in" and join as Plaintiffs in this collective action.

85.     Plaintiff and the FLSA Collective Members are not exempt from the right to receive minimum wages for all hours actually worked.

86.     At all relevant times, CorePower had a policy and practice of failing and refusing to pay minimum wages for all hours actually worked to its interns and instructors.

87.     As a result of CorePower's failure to compensate its interns and instructors, including Plaintiff and the FLSA Collective Members, with minimum wages for all hours actually worked, CorePower violated, and continues to violate, the FLSA.

88.     As a result of CorePower's failure to record, report, credit, and/or compensate its interns and instructors, including Plaintiff and the FLSA Collective Members, CorePower has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine wages, hours, and other conditions and practices of employment in violation of the FLSA, including 29 U.S.C. §§211(c) and 215(a).

89.     The foregoing conduct, as alleged, constitutes a *willful* violation of the FLSA within the meaning of 29 U.S.C. §255(a). In the alternative, the forgoing conduct, as alleged, constitutes a violation of the FLSA within the meaning of 29 U.S.C. §255(a).

WHEREFORE, Plaintiff, on behalf of herself and the FLSA Collective Members, pray for judgment against CorePower as follows:

A.     Judgment in the amount of the owed minimum wages for all time worked by Plaintiff and the FLSA Collective Members;

B.     Liquidated damages in an amount equal to the amount of unpaid minimum wages;

C.     Punitive damages;

D.     Reasonable attorneys' fees and costs incurred in prosecuting this action;

E.     Injunctive relief precluding Defendant from violating the FLSA; and

F.     Such other and further relief as this Court deems just and proper.

**JURY DEMANDED ON ALL CLAIMS**

Hart McLaughlin & Eldridge, LLC,

By: /s/Steven A. Hart
One of the Attorneys for Plaintiffs

Steven A. Hart, Esq. #6211008
Brian Eldridge, Esq. #6281336
Carter D. Grant, Esq. #6306058
Hart McLaughlin & Eldridge, LLC.
121 West Wacker Drive, Suite 1050
Chicago, Illinois 60601
Tel:   312-955-0545
shart@hmelegal.com
beldridge@hmelegal.com
cgrant@hmelegal.com